*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CRYSTAL LEDUKE, Personal Representative of the
ESTATE OF BRANDON DAVID CHAMBERS,

      Plaintiff-Appellee,

v

CITY OF SOUTH HAVEN,

      Defendant-Appellant,

and

KATE HOSIER and WILLIAM BRENNER,

      Defendants.

UNPUBLISHED
September 17, 2025
10:54 AM

No.   371030
Van Buren Circuit Court
LC No.   2022-072271-NO

Before:  PATEL, P.J., and BOONSTRA and CAMERON, JJ.

PATEL, P.J. (*dissenting*).

I would conclude that there is a genuine issue of material fact whether the proprietary-function exception to governmental immunity is applicable in this matter.  Accordingly, I respectfully dissent.

Summary disposition under MCR 2.116(C)(7) is proper when a claim is barred because of immunity granted under the law.  *Moraccini v City of Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012).  We must consider all documentary evidence in a light most favorable to the nonmoving party under MCR 2.116(C)(7).  *Id*.  "If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide."  *Id*.  (cleaned up).  "But when a relevant factual dispute does exist, summary disposition is not appropriate."  *Id*.

Under the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*., a governmental agency is generally immune from tort liability unless an exception applies.  One such exception is the proprietary-function exception, which provides:

The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes or fees. . . . [MCL 691.1413]

Thus, to be deemed a proprietary function, an activity (1) "must be conducted primarily for the purpose of producing a pecuniary profit," and (2) "cannot normally be supported by taxes or fees." *Dextrom v Wexford Co*, 287 Mich App 406, 421; 789 NW2d 211 (2010) (cleaned up). In this case, the parties' dispute centers on whether the City of South Haven operates its beaches primarily to produce a pecuniary profit. Relevant considerations in determining whether a governmental agency's primary purpose was to produce a pecuniary profit include: (1) "whether a profit is actually generated," and (2) "where the profit generated by the activity is deposited and how it is spent." *Id*. (cleaned up). "If profit is deposited in the general fund or used on unrelated events, the use indicates a pecuniary motive[.]" *Herman v City of Detroit*, 261 Mich App 141, 145; 680 NW2d 71 (2004).

The City does not dispute that the beaches have consistently generated a profit from 2015-2020. Rather, it argues that the beach revenue was not used to fund any other capital improvements, expenses, or operations for the City. But the City produced limited financial information to support its position—it primarily relied on self-serving testimony and basic financial statements. Plaintiff's financial expert, David J. Hammel, identified a number of expenditures in the financial statements that were subjective in nature and could not be correlated to actual expenses incurred in managing the beaches. These expenditures were returned to the City's general fund through various fees, an optional payment in lieu of taxes transfers, and "other contractual services."

Michelle Argue, the City's finance director and assessor, testified that the beach fund was only used for beach-related services. She maintained that annual profits remain in the beach fund and are rolled into the next fiscal year. But when Argue was questioned about various figures included in the financial statements, she was unable to provide an explanation. For example, the City's statement of activities for the year ended June 30, 2020, reflects that "parks and beach," which is one of the City's "business-type activities,"[1] had $515,854 in expenses, collected $686,882 in charges for services, had $50,000 in operating grants and contributions, and a net revenue of $221,028. Argue did not know whether the expenses were strictly for beaches or if nonbeach parks were included in "parks and beach." Argue also could not explain the source of the $50,000 in operating grants and contributions. When Argue was asked whether the $221,028 net revenue stayed in the beach fund at the end of the year or whether an amount was transferred into the general fund, she responded, "I don't recall a specific summary."

---

[1] The statement identifies "business-type activities" as electric utility, water utility, wastewater utility, marina, and parks and beach. "Governmental activities" are identified as general government, public safety, public works, health and welfare, culture and recreation, and interest on long-term debt.

The 2020 year-end statement reflects a transfer of $680,804 from "business-type activities" to "governmental activities."  Argue was asked about this transfer:

> *Q*. [A]t the very bottom there's Transfers/Internal Activities, $680,804.  What is that?
>
> *A*. I don't recall what makes that.
>
> *Q*. Is there someone within the City that would know that was involved with the transfer that might know better than you?
>
> *A*. I don't know.
>
> *Q*. Okay.  But from looking at this document you wouldn't know where it was transferred to or from?
>
> *A*. I know that administration fees would be involved with that.
>
> *Q*. Would you be able to say . . . how much of that 680,000, if any, came from the beach fund?
>
> *A*. I don't know.
>
> *Q*. Are you able to say that . . . the beach fund is not part of that amount?
>
> *A*. I don't recall.

Viewing this evidence and testimony in the light most favorable to plaintiff, a reasonable juror could conclude that the City's beach revenue is funding other governmental activities in the City

Argue also could not explain how the City's motor pool expenses were shared between the City's departments.  She testified that the City used vehicles and equipment for the beaches, but stated that the vehicles have multiple uses for various tasks throughout the City.  She did not know how many vehicles were used for the beaches or where the vehicles were used in the City each day.  She further acknowledged that a vehicle may be used on the beach one day and in another department another day.  The financial documents reflect that the motor pool fees fluctuated from $15,906 in 2017, $42,755.09 in 2018, $19,843 in 2019, $50,000.04 in 2020, and $18,478 in 2021.  But, as Hammel testified, there was no explanation for the drastic fluctuation or how the fees were calculated.  Hammel opined that the fees were subjective because "[s]omebody had to make a decision" as to the amount of fees to be charged, and there was no evidence presented to support the fee calculations.  Given the subjective nature of these fluctuating fees, a reasonable juror could conclude that the beach revenue is funding the City's nonbeach-related motor pool expenses.

The financial documents include categories for "admin fees—general fund" and "police depart fees—general fund."  Argue explained that the figures for those categories reflected the annual sums that were transferred from the beach fund to the pooled general fund for fees incurred

in administering the beach fund[2] and for police department personnel at the beaches. Argue claimed that the administrative fees and policing fees were strictly for beach-related services. However, Argue did not explain how those fees were calculated. Absent supporting documentation regarding the calculations, Hammel asserted that these "fees" were subjective. Given the subjective nature of these fees, a reasonable juror could conclude that the beach revenue is funding other governmental activities in the City.

Hammel identified another subjective figure in the City's financial documents—the "payment in lieu of taxes." Argue explained, "[B]ecause the properties are exempt, and otherwise if they were not owned by the government and exempt, then they would be taxed. So payments in lieu of taxes, essentially that, to cover what would be owed and taxed if it weren't exempt property." The financial documents reflect that the payment in lieu of taxes increased from $13,560 in 2017 to $21,958 in 2021. But there was no explanation or supporting documentation regarding the annual calculation. Further, Hammel opined that the payment was optional. Given the subjective nature of these optional "payments," a reasonable juror could conclude that the beach revenue is funding other governmental activities in the City.

There were several other arbitrary figures included in the financial documents. For example, there were charges for "other contractual services" of $130,684.01 in 2017, $106,587.78 in 2018, $148,931.29 in 2019, $56,736.72 in 2020, and $74,042.06 in 2021. However, the record does not reflect any explanation for these charges. There is also an unidentified liability of $47,648 "due to other funds" in 2019 and an unidentified transfer of $43,506 out of the beach fund into the general fund in 2020.

Jeffrey Bagalis, the City's accounting expert, provided no additional insight other than stating that Argue and the City's manager both testified that all of the fees and expenses were beach-related. In other words, because they stated it, it must be true.

A court "is not permitted to assess credibility, or to determine facts" in analyzing whether a genuine issue of material fact exists. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "Instead, the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists . . . ." *Id*. When necessary, a trial court may conduct an evidentiary hearing and make findings of fact and law to determine whether the proprietary-function exception applies, which is what the trial court was prepared to do in this case. *Dextrom*, 287 Mich App at 432. Viewing the financial documents and testimony in the light most favorable to plaintiff, I would conclude that there is a genuine issue

---

[2] Argue explained, "That's to cover the administrative work such as in the finance department that has to account for all the money and pay all the bills for the beach fund."

of material fact whether the City's operation of the beaches was conducted primarily to produce a pecuniary profit. Accordingly, I would affirm the trial court's denial of the City's motion for summary disposition under MCR 2.116(C)(7) and (10).


/s/ Sima G. Patel